**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————

AGUSTIN ACEVEDO,
JOSE GUTIERREZ,
MOISES AGUILAR, and
SAMANTHA MURPHY,
*on behalf of themselves and the Class,*

       Case No.:

      Plaintiffs,

        v.

      **CLASS COMPLAINT**

THOMAS BURKE,
FRANCES MCCOLE,
DOUGLAS KAPLAN,
MUCHO MOOLA, LLC
      d/b/a CELTIC DEVELOPERS GROUP
FAT 2 MUSCLE LLC
      d/b/a LILLIE'S VICTORIAN
      ESTABLISHMENT UNION SQUARE,
CAMELOT CASTLE LLC
      d/b/a OSCAR WILDE,
49TH STREET RESTAURANT LLC
      d/b/a LILLIE'S VICTORIAN
      ESTABLISHMENT TIMES SQUARE, and
STONEHOUSE NYC L P STRAFFORD VENTURES INC GN PTNR
      d/b/a PAPILLON BISTRO & BAR,

      Defendants.

——————————————————————

Plaintiffs, AGUSTIN ACEVEDO, JOSE GUTIERREZ, MOISES AGUILAR, and SAMANTHA

MURPHY ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through

their undersigned attorney, file this Class Complaint against Defendants, THOMAS BURKE,

FRANCES MCCOLE, and DOUGLAS KAPLAN (together, "Individual Defendants") and

MUCHO MOOLA, LLC d/b/a CELTIC DEVELOPERS GROUP, FAT 2 MUSCLE LLC d/b/a

LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE, CAMELOT CASTLE LLC

d/b/a OSCAR WILDE, 49TH STREET RESTAURANT LLC d/b/a LILLIE'S VICTORIAN ESTABLISHMENT TIMES SQUARE, and STONEHOUSE NYC L P STRAFFORD VENTURES INC GN PTNR d/b/a PAPILLON BISTRO & BAR, (together, "Corporate Defendants" and together with Individual Defendants, "Defendants") and state as follows:

## INTRODUCTION

1.  Plaintiff ACEVEDO alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL") that he is entitled to recover from Defendants: (1) unpaid wages, including overtime wages, (2) liquidated damages, and (3) attorneys' fees and costs.

2.  Plaintiff ACEVEDO, GUTIERREZ, AGUILAR, and MURPHY allege that pursuant to the New York Labor Law ("NYLL") they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to improper meal credit deductions, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.  Plaintiffs ACEVEDO, GUTIERREZ, and AGUILAR further allege that they and others similarly situated were deprived of their statutory rights as a result of Defendants' unlawful discriminatory practices, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), New York City Human Rights Law and the Administrative Code of the City of New York § 8-107 ("NYCHRL"), and brings this action against Defendants to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

4.  Plaintiff MURPHY further alleges that she was deprived of her statutory rights as a result of Defendants' sexual harassment, pursuant to the New York State Human Rights Law, N.Y.

Exec. Law § 296 ("NYSHRL"), New York City Human Rights Law and the Administrative Code of the City of New York § 8-107 ("NYCHRL"), and brings this action against Defendants to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.  Defendants are subject to personal jurisdiction in this judicial district.

6.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7.  Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

8.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9.  Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## PARTIES

**Plaintiffs:**

10. Plaintiff AGUSTIN ACEVEDO is a Latino male who is a resident of Richmond County, New York.

11. Plaintiff JOSE GUTIERREZ is a Latino male who is a resident of Queens County, New York.

12. Plaintiff MOISES AGUILAR is a Latino male who is a resident of Queens County, New York.

13. Plaintiff SAMANTHA MURPHY is a female who is a resident of Queens County, New York.

**Defendants' restaurants:**

14. Defendants own and operate four restaurants in New York City, at the following addresses:

    a. 13 East 17th Street, New York, NY 10003 ("Lillie's Victorian Establishment Union Square");

    b. 249 West 49th Street, New York, NY 10019 ("Lillie's Victorian Establishment Times Square");

    c. 45 West 27th Street, New York, NY 10001 ("Oscar Wilde"); and

    d. 22 East 54th Street, New York, NY 10022 ("Papillon Bistro & Bar").

15. Defendants operate these four restaurants as a single integrated enterprise. Specifically, they are engaged in related activities, share common ownership and have a common business purpose.

    a. All of Defendants' Restaurants are run by Defendant MUCHO MOOLA, LLC d/b/a CELTIC DEVELOPERS GROUP (See EXHIBIT A, Articles re: Corporate Defendants.)

    b. All of Defendants' Restaurants are engaged in the same business.

    c. All of Defendants' Restaurants share similar decor and appearance.

    d. All of Defendants' Restaurants are advertised jointly on Defendants' website (See EXHIBIT B, Web Site Screenshot.)

    e. All of Defendants' Restaurants are commonly owned by Individual Defendant THOMAS BURKE and operated by the same executive officers.

f.  FAT 2 MUSCLE LLC d/b/a LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE, CAMELOT CASTLE LLC d/b/a OSCAR WILDE, and 49TH STREET RESTAURANT LLC d/b/a LILLIE's VICTORIAN ESTABLISHMENT TIMES SQUARE are commonly owned by Individual Defendant FRANCIS MCCOLE.

g.  Two of Defendants' Restaurants, FAT 2 MUSCLE LLC d/b/a LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE and 49TH STREET RESTAURANT LLC d/b/a LILLIE's VICTORIAN ESTABLISHMENT TIMES SQUARE, share the common trade name "Lillie's Victorian Establishment."

h.  Defendants' Restaurants sell similar menu items. (See EXHIBIT C, Restaurant Menus.)

i.  Employees were interchangeable among Defendants' Restaurants and transferred to and from the different locations.

j.  Defendants' Restaurants implement the same wage, hour, and hiring policies and procedures established by Defendants. (See EXHIBIT D, Employee Handbook Cover Page.)

**Defendants:**

1.      Individual Defendant THOMAS BURKE is an owner of Corporate Defendants. Defendant BURKE had control over the terms and conditions of Plaintiffs' employment, and those of similarly situated employees. Specifically, with respect to Plaintiffs and other similarly situated employees, Defendant BURKE maintained the authority to (1) hire and fire; (2) determine rate and method of pay; (3) adjust employee work schedules; (4) maintain employees' employment records; and (5) otherwise affect the quality of employment of Plaintiffs and the

Class members. Defendant BURKE exercised functional control over the business and financial operations of the Corporate Defendants.

2.      Individual Defendant FRANCES MCCOLE is an owner of Corporate Defendants. Defendant MCCOLE had control over the terms and conditions of Plaintiffs' employment, and those of similarly situated employees. Specifically, with respect to Plaintiffs and other similarly situated employees, Defendant MCCOLE maintained the authority to (1) hire and fire; (2) determine rate and method of pay; (3) adjust employee work schedules; (4) maintain employees' employment records; and (5) otherwise affect the quality of employment of Plaintiffs and the Class members. Defendant MCCOLE exercised functional control over the business and financial operations of the Corporate Defendants.

3. Individual Defendant DOUGLAS KAPLAN is a financial officer of Corporate Defendants. Defendant KAPLAN had control over the terms and conditions of Plaintiffs' employment, and those of similarly situated employees. Specifically, with respect to Plaintiffs and other similarly situated employees, Defendant KAPLAN maintained the authority to (1) hire and fire; (2) determine rate and method of pay; (3) adjust employee work schedules; (4) maintain employees' employment records; and (5) otherwise affect the quality of employment of Plaintiffs and the Class members. Defendant KAPLAN exercised functional control over the business and financial operations of the Corporate Defendants.

4. Corporate Defendant MUCHO MOOLA, LLC d/b/a CELTIC DEVELOPERS GROUP is a corporation organized under the laws of the State of New York, with a headquarters at 13 East 17th Street, New York, NY 10003, and an address for service of process at 775 Park Avenue Ste 205, Huntington, NY 11743.

5.  Corporate Defendant FAT 2 MUSCLE LLC d/b/a LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE is a corporation organized under the laws of the State of New York, with a headquarters and principal place of business at 13 East 17th Street, New York, NY 10003.

6.  Corporate Defendant CAMELOT CASTLE LLC d/b/a OSCAR WILDE is a corporation organized under the laws of the State of New York with a headquarters and principal place of business at 45 West 27th Street, New York, NY 10001.

7.  Corporate Defendant 49TH STREET RESTAURANT LLC d/b/a LILLIE'S VICTORIAN ESTABLISHMENT TIMES SQUARE is a corporation organized under the laws of the State of New York with a headquarters and principal place of business at 249 West 49th Street, New York, NY 10019.

8.  Corporate Defendant STONEHOUSE NYC L P STRAFFORD VENTURES INC GN PTNR, d/b/a PAPILLON BISTRO & BAR is a corporation organized under the laws of the State of New York with a headquarters and principal place of business at 22 East 54th Street, New York, NY 10022.

9.  At all relevant times, the Corporate Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

10. At all relevant times, Defendants were an employer that employs four (4) or more "employees" within the meaning of the NYSHRL and NYCHRL, and are an "employer" and "person" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

11. At all relevant times, the work performed by Plaintiffs and Class Members was directly essential to the business operated by Defendants.

### **RULE 23 CLASS ALLEGATIONS**

12. Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and MURPHY bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees of Defendants on or after the date that is six years before the filing of the Complaint in this case defined herein (the "Class Period").

13. All said persons, including Plaintiffs, are referred to herein as the "Class" or "Class Members". The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

14. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that exact number are based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass, the "Protected Subclass". The Protected Subclass includes nonwhite employees who have suffered from discrimination by Defendants, who also number more than forty (40). Protected Subclass Plaintiffs are members of the Class.

15. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay proper wages as a result of an invalid meal credit deduction, and failing to provide proper wage statements. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. The Protected Subclass members were subject to the same corporate practice of Defendants for creating a hostile work environment as a result of racial discrimination. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

16. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent, with experience in both class action litigation and employment litigation, and previous representation of Plaintiffs in wage and hour and discrimination cases.

17. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would require. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expense and burden of individual

litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. However, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in significant savings of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in an impairment of Class Members' rights and the disposition of their interests through actions which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

18. Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

19. There are questions of law and fact common the Class with predominate over any questions affecting only individual Class Members, including:

    (a) Whether Defendants employed Plaintiffs and Class Members within the meaning of the state labor laws;

    (b) Whether Defendants provided proper wage statements to Plaintiffs and Class Members;

(c) Whether Defendants provided proper wage and hour notices to Plaintiffs and Class

Members;

(d) Whether Defendants deducted an invalid meal credit from Plaintiffs and Class

Members' wages; and

(e) Whether Defendants discriminated against members of the Protected Subclass.

## STATEMENT OF FACTS

### Plaintiff ACEVEDO

20. On or about May 2021, Defendants hired Plaintiff AGUSTIN ACEVEDO to work as a

Manager at Lillie's Victorian Establishment Union Square located at 13 East 17th Street, New

York, NY 10003.

21. Defendants deliberately gave Plaintiff ACEVEDO the misleading title of "manager" in

an attempt to support their misclassification of him as exempt from FLSA requirements, even

though Plaintiff ACEVEDO's duties did not pertain to the management or administration of

Lillie's Victorian Establishment Union Square or any other subdivision of Defendants' business.

At all relevant times, Plaintiff ACEVEDO's duties were largely ministerial in nature. Defendants

never permitted Plaintiff ACEVEDO to exercise discretion or independent judgment with respect

to matters of significance. All such decisions were taken by senior officials of Defendants, who

did not solicit Plaintiff ACEVEDO's input. Further, Plaintiff ACEVEDO was subject to the

direct control and supervision of Defendants at all times.

22. Throughout his employment, Defendants paid Plaintiff ACEVEDO $25.00 per hour.

Plaintiff ACEVEDO would clock in and out. However, due to a policy of timeshaving,

Defendants would not pay Plaintiff ACEVEDO for all of the hours that he worked, resulting in

an average of two (2) unpaid hours per day, or ten (10) unpaid hours per week, including overtime hours.

23. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff ACEVEDO for all hours worked, in violation of the FLSA and NYLL, due to a policy of timeshaving.

24. As set forth below, Plaintiff ACEVEDO and class members had their rights violated by Defendants due to an improper meal credit deduction and wage statements that did not meet the requirements of the NYLL.

25. As set forth below, Plaintiff ACEVEDO and members of the Protected Subclass were subjected to a hostile work environment due to discrimination.

### Plaintiff GUTIERREZ

26. On or about May 2, 2021, Defendants hired Plaintiff JOSE GUTIERREZ to work as a bartender at Lillie's Victorian Establishment Union Square located at 13 East 17th Street, New York, NY 10003.

27. As set forth below, Plaintiff GUTIERREZ and Class members had their rights violated by Defendants due to an improper meal credit deduction and wage statements that did not meet the requirements of the NYLL.

28. As set forth below, Plaintiff GUTIERREZ and members of the Protected Subclass were subjected to a hostile work environment due to discrimination.

**Plaintiff AGUILAR**

29. On or about June 2021, Defendants hired Plaintiff MOISES AGUILAR to work as a Barback at Lillie's Victorian Establishment Union Square located at 13 East 17th Street, New York, NY 10003.

30. As set forth below, Plaintiff AGUILAR and Class members had their rights violated by Defendants due to an improper meal credit deduction and wage statements that did not meet the requirements of the NYLL.

31. As set forth below, Plaintiff AGUILAR and members of the Protected Subclass were subjected to a hostile work environment due to discrimination.

**Plaintiff MURPHY**

32. On or about September 28, 2021, Defendants hired Plaintiff SAMANTHA MURPHY to work as a server at Lillie's Victorian Establishment Union Square located at 13 East 17th Street, New York, NY 10003.

33. As set forth below, Plaintiff MURPHY and Class members had their rights violated by Defendants due to an improper meal credit deduction and wage statements that did not meet the requirements of the NYLL.

34. As set forth below, Plaintiff MURPHY was subjected to sexual harassment.

**Facts Pertaining to All Claims**

35. On September 29, 2021, at or around 5:00 p.m., the Individual Defendants arrived at Lillie's Victorian Establishment Union Square at 13 East 17th Street, and began ordering alcoholic beverages from the bar.

36. At or around 11:00 p.m., individual Defendants FRANCIS MCCOURT and DOUGLAS KAPLAN left Lillie's Victorian Establishment Union Square, leaving Individual Defendant THOMAS BURKE.

37. Sometime after 11:00 p.m., Defendant BURKE requested an additional alcoholic beverage from a Latino bartender. Defendant BURKE apparently terminated the employment of this Latino bartender immediately when he was not served a drink.

38. Defendant BURKE informed at least one employee that he intended to drive home, and Defendant BURKE's level of intoxication at the time of his eventual departure was such that he collapsed to the ground on his way out. (See EXHIBIT E, Screenshot From Video of Defendant BURKE Exiting Lillie's.) Therefore, if in fact Defendant BURKE was refused service, it would not constitute proper grounds for termination of employment.

39. Later, in evident confusion as to whether Plaintiff GUTIERREZ was the same Latino bartender whose employment he had previously terminated, Defendant BURKE began to harass Plaintiff GUTIERREZ, complaining that Plaintiff GUTIERREZ had refused to serve him earlier, although Plaintiff GUTIERREZ had not refused service to Defendant BURKE.

40. Defendant BURKE loudly mocked Plaintiff GUTIERREZ, claiming that he couldn't speak English and therefore was not a bartender.

41. Defendant BURKE continued to harass Plaintiff GUTIERREZ, with phrases like "you don't understand what people are saying, how can you be a bartender?" and "you don't even understand what I'm saying", phrases meant to mock Plaintiff GUTIERREZ for his race.

42. Defendant BURKE, falsely and without any provocation, accused Plaintiff GUTIERREZ of stealing from Defendants, another accusation that was meant to belittle Plaintiff GUTIERREZ for his race.

14

43. Defendant BURKE then informed Plaintiff GUTIERREZ that his employment was terminated, effective immediately.

44. When Plaintiff GUTIERREZ did not exit the premises as fast as Defendant BURKE wanted him to, Defendant BURKE began yelling abuse at Plaintiff GUTIERREZ, clapping loudly and telling him to hurry.

45. Defendant BURKE requested a drink from Plaintiff AGUILAR.

46. Defendant BURKE began harassing Plaintiff AGUILAR in a similar manner to his harassment of Plaintiff GUTIERREZ.

47. Defendant BURKE yelled at Plaintiff AGUILAR, "is this what they teach you in your country?" and made further remarks disparaging his race, including openly mocking Plaintiff AGUILAR's family.

48. Defendant BURKE then terminated Plaintiff AGUILAR's employment without cause or provocation.

49. Plaintiff ACEVEDO spoke with Defendant BURKE, to determine the cause of the apparent trouble.

50. Defendant BURKE, in a state of agitation, continued his abuse against nonwhite employees, complaining about "their culture," declaring "this guy here doesn't even speak English and he's behind the bar," and lamenting that because an employee did not speak English, he "could not get my drink."

51. These outbursts by Defendant BURKE to Plaintiff ACEVEDO were delivered along with repeated physical contact. (See EXHIBIT F.)

52. By way of justifying his employment termination decisions, Defendant BURKE explained that he was currently raising $25 million to expand his restaurants into Las Vegas,

therefore he feels it is important for his employees to work as a team. Defendant BURKE further justified the need for terminating unwanted employees, explaining that he needs employees who are enthusiastic about eventually taking over the company, because Defendant BURKE is happy with his wife and two kids, and therefore hopes to sell Lillie's Victorian to his employees.

53. Although Plaintiff MURPHY was not the server assigned to Defendant BURKE, Defendant BURKE repeatedly called her to him, where he would make statements including "it's great that you're both smart and pretty", "you are very important, you have to stay" and "let me know if they're not paying you enough money and I can top you off."

54. Defendant BURKE asked Plaintiff MURPHY if she wanted to get a drink with him, and Plaintiff MURPHY declined.

55. During this time, Defendant BURKE was repeatedly touching Plaintiff MURPHY without consent, including holding and stroking her hand inappropriately. (See EXHIBIT G.)

56. The following day, Plaintiff ACEVEDO contacted Defendant MCCOLE, and asked whether Defendant BURKE's actions approved by Defendants MCCOLE and KAPLAN. Plaintiff ACEVEDO was told that both Defendant MCCOLE and Defendant KAPLAN supported the actions of Defendant BURKE from the previous night.

57. According to observations made by Plaintiffs, as well as conversations with other employees of Defendants, Defendant BURKE's behavior was emblematic of an overall hostility toward nonwhite employees on the part of all Defendants, and Protected Subclass members were all subject to the same hostile work environment as Plaintiffs ACEVEDO, GUTIERREZ, and AGUILAR.

58. As a general example, but not the only example, of this hostility, Plaintiff AGUILAR was told by multiple members of the kitchen staff that it was understood among the staff that the Defendants do not hire black people.

59. Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass members have and will continue to suffer economic and other damages as a result of the Defendants' discriminatory conduct.

60. Throughout their employment, Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and MURPHY, along with Class Members, were not provided with proper wage statements by Defendants.

61. At all relevant times, Defendants claimed an $18.00 meal credit per week (or $3.60 meal credit per workday), which was deducted from Plaintiffs' wages. Defendants did not satisfy the regulatory meal credit requirements because Defendants did not provide at least one item from each food group. The meals regularly failed to contain either protein, grains or potatoes, or fruits or vegetables. Employees were only provided with water to drink. Class Members were similarly deducted $18.00 per week for a meal credit.

62. Defendants knowingly and willfully operated their business with a policy of not providing wage statements to Plaintiffs and Class Members that meet the requirements of New York Labor Law § 195(3), including the requirement of listing the phone number of employer.

63. Defendants willfully violated the rights of Plaintiffs and Class members by improperly claiming a meal credit in violation of NYLL requirements.

64. Plaintiffs retained Igbokwe PLLC to represent Plaintiffs and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT AGAINST ALL
## DEFENDANTS

## ON BEHALF OF PLAINTIFF ACEVEDO

65. Plaintiffs reallege all paragraphs above as if fully set forth herein.

66. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67. At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

68. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

69. At all relevant times, Defendants failed to pay Plaintiff ACEVEDO for all hours worked.

70. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff ACEVEDO for all hours worked due to a policy of timeshaving.

71. Defendants failed to properly disclose or apprise Plaintiffs of his rights under the FLSA.

72. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff ACEVEDO is entitled to liquidated damages pursuant to the FLSA.

73. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff ACEVEDO suffered damages in an amount not presently ascertainable of unpaid compensation, plus an equal amount as liquidated damages.

74. Records, if any, concerning the number of hours worked by Plaintiff ACEVEDO, and the actual compensation paid to Plaintiff ACEVEDO, are in the possession and custody of Defendants. Plaintiff ACEVEDO intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of the Court to amend this Complaint to set forth the precise amount due.

75. Plaintiff ACEVEDO is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS AND THE CLASS**

76. Plaintiffs reallege all paragraphs above as if fully set forth herein.

77. At all relevant times, Plaintiffs and Class Members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

78. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by New York Labor Law § 195(3).

79. Defendants willfully violated Plaintiffs' and Class members' rights by improperly claiming a meal credit. Plaintiff and Class members were not provided the requisite meal options meeting the regulatory requirements, in violation of the NYLL requirements.

80. Due to Defendants' New York Labor Law violations, Plaintiffs and Class Members are entitled to recover from Defendants statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS

## ON BEHALF OF PLAINTIFFS ACEVEDO, GUTIERREZ, AGUILAR, AND PROTECTED SUBCLASS MEMBERS

81. Plaintiffs reallege all paragraphs above as if fully set forth herein.

82. Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members are employees and qualified persons within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

83. Defendants violated Plaintiff ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Member's statutorily protected rights under the NYSHRL, New York Executive Law § 296, by subjecting Plaintiffs ACEVEDO, GUTIERREZ, and AGUILAR to a hostile work environment due to discrimination on the basis of race.

84. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Member's protected rights under the NYSHRL.

85. As a result of Defendants' unlawful employment practices, Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Member sustained injury, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

86. Due to Defendants' violation under the NYSHRL due to discrimination, Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members are entitled to recover from Defendants: (1) an injunction ordering Defendant to cease its discriminatory practices as

described herein; (2) back pay; (3) front pay; (4) compensatory damages; and (5) punitive damages.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS

## ON BEHALF OF PLAINTIFFS ACEVEDO, GUTIERREZ, AGUILAR, AND PROTECTED SUBCLASS MEMBERS

87. Plaintiffs reallege all paragraphs above as if fully set forth herein.

88. Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members are employees and qualified persons within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

89. Defendants violated Plaintiff ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members' statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by subjecting Plaintiff ACEVEDO and Protected Subclass Members to a hostile work environment due to discrimination on the basis of race.

90. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Member's protected rights under the NYCHRL.

91. As a result of Defendants' unlawful employment practices, Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members sustained injury, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

92. Due to Defendants' violation under the NYCHRL due to discrimination and retaliation, Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and Protected Subclass Members are entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorneys' fees and costs.

## COUNT V

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE AND THOMAS BURKE

## ON BEHALF OF PLAINTIFF MURPHY

93. Plaintiffs reallege all paragraphs above as if fully set forth herein.

94. Plaintiff MURPHY is an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

95. Defendants violated Plaintiff MURPHY's statutorily protected rights under the NYSHRL, New York Executive Law § 296, by subjecting Plaintiff MURPHY to sexual harassment.

96. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff MURPHY's protected rights under the NYSHRL.

97. As a result of Defendants' unlawful employment practices, Plaintiff MURPHY sustained injury, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

98. Due to Defendants' violation under the NYSHRL, Plaintiff MURPHY is entitled to recover from Defendants: (1) an injunction ordering Defendant to cease its discriminatory

practices as described herein; (2) back pay; (3) front pay; (4) compensatory damages; and (5) punitive damages.

## COUNT VI

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW AGAINST DEFENDANTS LILLIE'S VICTORIAN ESTABLISHMENT UNION SQUARE AND THOMAS BURKE

## <u>ON BEHALF OF PLAINTIFF MURPHY</u>

99. Plaintiffs reallege all paragraphs above as if fully set forth herein.

100.    Plaintiff MURPHY is an employee and qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

101.    Defendants violated Plaintiff MURPHY's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by subjecting Plaintiff MURPHY to sexual harassment.

102.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff MURPHY's protected rights under the NYCHRL.

103.    As a result of Defendants' unlawful employment practices, Plaintiff MURPHY sustained injury, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

104.    Due to Defendants' violation under the NYCHRL, Plaintiff MURPHY is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorneys' fees and costs.

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful and violate the FLSA and applicable state wage and hour laws;

b.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

c.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  An award of unpaid compensation due under the FLSA and the applicable state laws;

e.  An award of statutory penalties as a result of Defendants' failure to comply with the wage notice, wage statements, and meal credit requirements under the applicable state laws;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, pursuant to the FLSA and/or the applicable state laws;

g.  An order awarding relief for Defendants' discriminatory conduct, including but not limited to back pay, front pay, compensatory, and punitive damages;

h.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of this action as a class action pursuant to F.R.C.P. 23;

j.  Designation of Plaintiffs ACEVEDO, GUTIERREZ, AGUILAR, and MURPHY as Representative of the Class; and

k.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 23, 2021                    Respectfully Submitted,

By:    _/s/ Daniel Needham_____
Daniel Needham, Esq. (DN 8648/5143060)
Law Office of William Igbokwe
28 Liberty Street, 6th Floor
New York, NY 10005
Phone: (347) 467-4674
Fax: (347) 467-6367
*Attorneys for Plaintiffs and the Class*